FILED
2012 May-29 PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LINDA OWENS KENNEDY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:11-CV-2427-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MEMORANDUM OPINION**

Plaintiff Linda Owens Kennedy ("Ms. Kennedy") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Kennedy timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Kennedy was a forty-eight-year-old female at the time of her video hearing before the administrative law judge (the "ALJ") held on June 18, 2009. (Tr. 14, 36,

26). During this proceeding, the ALJ did not inquire about Ms. Kennedy's level of education. Ms. Kennedy's prior vocational experience includes positions as a cafeteria cashier and bank teller. (Tr. 33).

Ms. Kennedy protectively applied for DIB June 9, 2007. (Tr. 14, 36). She maintains that she became disabled on October 2, 2005, due to lumbar degenerative back disease and mild carpal tunnel syndrome. (Tr. 14, 36). Her claim was denied initially on August 9, 2007. (Tr. 14, 36).

Ms. Kennedy filed a request for a hearing on August 16, 2007. (Tr. 44). A video hearing before the ALJ was held on June 18, 2009, with Ms. Kennedy appearing in Birmingham, Alabama. (Tr. 14, 26).

On December 14, 2009, the ALJ concluded Ms. Kennedy was not disabled as defined by the Act and denied her DIB application. (Tr. 14-22). On December 21, 2009, Ms. Kennedy submitted a request for review of the ALJ's decision, which was received on January 7, 2010. (Tr. 8, 9). On May 5, 2011, the Appeals Council denied review. As a result, the ALJ's disability determination became the final decision of the Commissioner. (Tr. 1).

On July 1, 2011, Ms. Kennedy initiated her lawsuit with this court asking for a review of the ALJ's decision. (Doc. 1). On December 16, 2011, Ms. Kennedy filed a brief (Doc. 7) in support of her appeal, and on February 6, 2012, the Commissioner

answered with his responsive brief. (Doc. 9). Ms. Kennedy elected not to file a reply. This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.[1]

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such

[1] The undersigned has rendered several other comparable decisions which have reversed the Commissioner due to an underdeveloped record and/or an inadequately supported residual functional capacity ("RFC") determination from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding when RFC finding is not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Howard v. Astrue*, No. 3:10-CV-0527-VEH, (Docs. 15, 16) (Dec. 16, 2010) (same); *Stewart v. Astrue*, No. 5:11-CV-2103-VEH, (Docs. 10, 11) (May 14, 2012) (same).

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

**STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

[2] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through April 19, 2012.

be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show

that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Ms. Kennedy had not engaged in substantial gainful activity since the alleged onset date of her disability, *i.e.*, October 2, 2005. (Tr. 16 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant ha[s] the following severe impairments: degenerative disc disease and pain disorder." (Tr. 16 ¶ 3 (citation omitted)). Accordingly, the ALJ concluded that Ms. Kennedy satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Kennedy did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18 ¶ 4). Ms. Kennedy does not challenge this determination on appeal.

Regarding Ms. Kennedy's residual functional capacity ("RFC"), the ALJ found:

> [T]he claimant ha[s] the . . . [ability] to lift 10 pounds, stand and/or walk

> 2 hours in an eight hour workday and sit 6 hours in an eight hour workday. Despite the limitations imposed by her pain disorder, the claimant remains capable of understanding, remembering and carrying out simple job instructions, interacting with supervisors, coworkers and the general public and adapting to change.

(Tr. 18 ¶ 5). As the ALJ summarized his RFC finding, "the claimant remains capable of performing unskilled work activity at the sedentary exertional level."[3] (Tr. 21).

Against this backdrop, and in reliance upon testimony from a vocational expert, the ALJ concluded that Ms. Kennedy's impairments prevented her from performing past relevant employment. (Tr. 21; Tr. 21 ¶ 6). Because of the ALJ's finding that Ms. Kennedy was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 21-22).

Using the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ determined that Ms. Kennedy was capable of performing certain unskilled sedentary jobs which exist in significant

---

[3] The Regulations define sedentary work as:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (current through April 19, 2012).

numbers in the national economy. (Tr. 32). Examples of such possible sedentary positions included employment as final assembler and a simple information clerk. (*Id.*). Accordingly, the ALJ concluded Ms. Kennedy was not disabled as defined by the Social Security Act, and denied her DIB claim. (Tr. 22; Tr. 22 ¶ 11).

## ANALYSIS

In this appeal, Ms. Kennedy raises several different issues, including whether the ALJ erred in his partial rejection of the medical source opinion[4] provided by Ronald Moon ("Dr. Moon") on July 15, 2009 (Tr. 386), which indicated that her medical condition would likely cause her "to miss three or more days per month of work[.]" (*Id.*; *see also* Tr. 20). The court turns to this issue first and agrees with Ms. Kennedy that, in formulating her RFC without the benefit of any additional vocationally-related opinion evidence from a physician, under the circumstances of her case, the Commissioner has committed reversible error.[5]

---

[4] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

[5] As a result, the court does not reach the merits of the other issues presented on appeal.

**I. In the Absence of a Supporting Medical Source Statement or a Physical Capacities Evaluation by a Physician that Considers the Impact of Ms. Kennedy's Severe Impairments, the ALJ's RFC Determination that She Can Perform a Reduced Range of Unskilled Sedentary Work Is Not Supported by Substantial Evidence.**

The lack of a medical source opinion or a physical capacities evaluation conducted by a physician that substantiates Ms. Kennedy's ability to perform a reduced range of unskilled sedentary work given her severe impairments constitutes reversible error. Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

The court acknowledges that the ALJ did refer within his opinion to the medical records from a physician, Dr. Beau Bagley ("Dr. Bagley"), pertaining to his consultative examination of Ms. Kennedy. (*See* Tr. 17-18 (summarizing medical evidence from Dr. Bagley's examination conducted on August 4, 2007); Tr. 20 ("rel[ying] on the physical examination findings of Dr. Bagley" in determining Ms. Kennedy's RFC)). However, such documentation from Dr. Bagley is reported merely as raw physical findings applicable to Ms. Kennedy. (*See, e.g.*, Tr. 219-22).

Moreover, with the sole exception of the physician's assessment of pain form provided by Dr. Moon (Tr. 386) (which the ALJ disregarded as "not well-supported

by his own treatment notes and [a]s inconsistent with the longitudinal record" (Tr. 20)),[6] the record lacks a physical capacities evaluation or an opinion from a doctor about the impact of Ms. Kennedy's impairments in vocational terms.[7] *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. §

---

[6] Oddly, the ALJ credited the portion of Dr. Moon's opinion which indicated that Ms. Kennedy "experiences moderately severe pain in reducing her residual functional capacity to unskilled work." (Tr. 20). Thus, the ALJ incongruously agreed with Dr. Moon that Ms. Kennedy's moderately severe pain would prevent her from performing work beyond the level of unskilled, but he rejected Dr. Moon's conclusion that Ms. Kennedy would miss multiple days of work due to the disabling symptoms caused by that same degree of pain as being contrary to his treatment notes. The court observes that the ALJ's disjointed treatment of the medical evidence supplied by Dr. Moon provides an additional reason in favor of remand. *Cf. McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence."); *Sheffield v. Astrue*, No. 5:08-CV-1676-VEH, (Doc. 12 at 11) (N.D. Ala. Dec. 1, 2009) ("However, the court cannot draw any such conclusion based on the record before it at this time because the ALJ has failed to offer any explanation for his disjointed treatment of Dr. Lary's findings and opinion despite indicating that he afforded them significant weight.").

[7] The ALJ did mention a physical functional assessment conducted by a state agency consultant, Renita Parker ("Ms. Parker"), on August 9, 2007 (Tr. 223-230), and "gave somewhat less weight to [it] . . . because [the] opinion that the claimant remains capable of performing light work activity seems somewhat too optimistic given the claimant's ongoing pain treatment." (Tr. 20). There is no indication in the record that Ms. Parker, who performed this functional evaluation of Ms. Kennedy based exclusively upon a paper review, is a doctor.

404.1567(a) . . . [the Commissioner may not] make that connection himself.'" (quoting *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 292 (1st Cir. 1986))).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician, that the claimant was not disabled:

> While the Record contains Ms. Rogers'[s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required. *Id.* In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations. Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers' [s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in

a medical record." (emphasis added) (citing *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir.1991))); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (emphasis added) (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 893 F.2d 401, 403 (1st Cir.1989))); *cf. Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973) ("To meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ or Ms. Parker, the state agency consultant, is not able to discern Ms. Kennedy's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records. Moreover, the lack of a medically-determined physical RFC that supports the ALJ's RFC determination is particularly critical here when, undisputably, Ms. Kennedy is not able to perform relevant past work given the additional job-related restrictions that the ALJ placed on her at the sedentary exertional level. As the undersigned has previously recognized in another fifth-step burden decision that similarly resulted in

a remand for further development of the claimant's functional abilities:

> The Eleventh Circuit has held that the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.*

*Clemmons v. Barnhart*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007); *cf. Reeves v. Heckler*, 734 F.2d 519, 522 n.1 ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (citing *Ford v. Sec'y of Health & Human Servs*, 659 F.2d 66, 69 (5th Cir.1981) (Unit B))).[8]

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Kennedy by a physician that corroborates the ALJ's determination that she is capable of performing sedentary work with certain non-exertional restrictions despite her severe impairments of degenerative disc disease and pain disorder, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to

---

[8] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of the Unit B panel of the former Fifth Circuit handed down after September 30, 1981.

the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.").

Likewise, the ALJ's determination that Ms. Kennedy can perform sedentary work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

**CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 29th day of May, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge